UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WISCONSIN

---

In re:                                                                                    Case Number:  06-10764-13

DANIEL L. MANCL and
CAROL A. MANCL,

             Debtors.

---

MEMORANDUM OPINION, FINDINGS OF FACT,
AND
<u>CONCLUSIONS OF LAW</u>

      11 U.S.C. § 1325(b)(1)(B) provides that chapter 13 debtors must direct all of their "projected disposable income" to the payment of unsecured claims for the duration of their plan.  Historically, courts calculated disposable income by deducting the monthly expenses found on a debtor's schedule J from the monthly income listed on schedule I.  The "projected" disposable income available to creditors was then determined by multiplying the monthly "disposable income" by the number of months the plan was scheduled to run.  The chapter 13 trustee routinely examined the scheduled expenses to determine whether they were reasonable and necessary, and any disputes were brought before the Court for resolution.  Likewise, the debtor's scheduled income was expected to be a reasonable forecast of monthly earnings for the projected life of the plan.

      Under the BAPCPA amendments to chapter 13, Congress significantly altered this calculus.  11 U.S.C. § 1325(b)(2) now defines disposable income as "current monthly income" less amounts "reasonably necessary to be expended" for

the maintenance and support of the debtors and their dependents.  Current monthly income appears to be a defined term, found in 11 U.S.C. § 101(10A), and is essentially defined as an average of monthly income received within the six-month period prior to the commencement of the case.   Section 1325(b)(3) also directs that for above-median income debtors, the "amounts reasonably necessary" under § 1325(b)(2) shall be determined "in accordance with subparagraphs (A) and (B) of section 707(b)(2)."  All of these defined terms have posed challenges for courts attempting to determine what amount a particular debtor is obligated to devote to a chapter 13 plan.  These changes have also generated the issue presently before the Court.

The debtor, Daniel Mancl, works at a paper mill in Wisconsin Rapids.  During the six-month period prior to the filing of this bankruptcy petition, he was injured and unable to work.  He received disability payments which were substantially less than his normal wages.  He has now gone back to work, and the debtors admit that their "real" income is presently much higher than the "current monthly income" used to calculate their disposable income on the Form B22C.  The chapter 13 trustee contends that the debtors' disposable income should not be calculated by an average which is "uncharacteristically low due to a job interruption."  Instead, the trustee believes that the debtors' expenses should be deducted from their actual monthly income in order to project the disposable income available over the life of the plan.

The Court recognizes that there is an emerging split of authority in the reported cases as to the precise manner in which §§ 1325(b)(1)(B) and 1325(b)(2)

should be applied. Some courts conclude that "projected disposable income" is different than "disposable income" and contemplates a forward-looking examination. These courts hold that the Form B22C is not conclusive of a debtor's projected disposable income, and that a court may consider a debtor's actual income and expenses on schedules I and J. See In re Slusher, 359 B.R. 290 (Bankr. D. Nev. 2007); In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006); In re Hardacre, 338 B.R. 718 (Bankr. N.D. Tex. 2006). Other courts have found that the determination of whether debtors are devoting sufficient income to their plan is based solely on the application of the means test calculations, not their actual income and expenses. See In re Hanks, 362 B.R. 494 (Bankr. D. Utah 2007); In re Barr, 341 B.R. 181 (Bankr. M.D. N.C. 2006); In re Alexander, 344 B.R. 742 (Bankr. E.D. N.C. 2006); In re Guzman, 345 B.R. 640 (Bankr. E.D. Wis. 2006).

As the debtors note in their brief, the terms "projected disposable income" and "disposable income" existed in the statute prior to the enactment of the BAPCPA. All that changed was the definition of how to calculate the "disposable income" available to be projected over the life of the plan. Under the prior provisions, there were often reports of disparities between courts as to what might constitute a "reasonable and necessary" expense which could be deducted from the debtor's income. Congress attempted to fashion a sense of uniformity by grafting the "means test" and its mechanical calculations of a debtor's ability to pay into chapter 13. The challenge is that the means test essentially establishes a "snapshot" of the debtors' finances at the time of filing, and was largely envisioned as an "eligibility test" for chapter 7. See In re Kogler, 368 B.R. 785 (Bankr. W.D.

Wis. 2007); In re Hartwick, 352 B.R. 867 (Bankr. D. Minn. 2006). As this case illustrates, the integration of the means test into the calculation of projected disposable income can hardly be characterized as seamless.

As is often the case, however, it is helpful to consider the larger picture. The point of chapter 13 is to afford a debtor an opportunity to reorganize his debts, and before a plan can be confirmed the court must find that it was filed in good faith. The essential inquiry in the context of good faith is to ask whether a debtor is trying to pay creditors to the reasonable limit of his ability, or if he is trying to thwart them. In re Schaitz, 913 F.2d 452, 453 (7th Cir. 1990); see also In re Smith, 286 F.3d 461 (7th Cir. 2002). For above-median income debtors in chapter 13, the means test expenses are statutorily defined as "reasonable and necessary" expenses, which may indeed make it difficult to challenge such expenses on a "good faith" basis, at least to the extent that the debtor actually incurs the expenses or is otherwise entitled to claim a deduction. See In re Carlton, 362 B.R. 402, 411 (Bankr. C.D. Ill. 2007) ("If an expense is allowed under § 702(b)(2), it meets the new definition of 'reasonably necessary' and no subjective review of the expense by the Court is permitted.").

The same simply cannot be said of the income projections generated by the statutory calculation of "current monthly income." Blind adherence to the Form B22C for the determination of a debtor's income could lead to arbitrary results based solely on the timing of a petition, potentially penalizing both debtors and creditors unfairly. In Jass, for example, one of the debtors experienced medical problems which were likely to significantly alter their income over the life of the

4

plan. Much like the present case, the income calculations of the Form B22C were not a fair representation of the debtors' future budget, and the court found that it was appropriate to modify their "projected disposable income" in accordance with the actual numbers. 340 B.R. at 418.

Similarly, in In re Grady, 343 B.R. 747 (Bankr. N.D. Ga. 2006), the court declined to use the "current monthly income" as referenced in the debtors' means test form because the debtors' actual income had decreased dramatically from historical averages as a result of a heart attack and the resulting loss of work. In the case of In re Casey, 356 B.R. 519 (Bankr. E.D. Wash. 2006), the court concluded that the Form B22C was only the starting point of the disposable income inquiry; the disposable income figure calculated on the form, as modified by anticipated changes in financial circumstances at the time of confirmation, was what the court would consider as projected disposable income. As the court noted in In re LaSota, 351 B.R. 56, 61 (Bankr. W.D. N.Y. 2006), the good faith test is among the "key tools" in achieving a sense of what is often at best a "rough justice" in the context of calculating disposable income.

Certainly that is true in this case. As calculated by their Form B22C, the debtors' CMI represents an economic aberration rather than either a historical norm or a realistic future forecast. As the trustee notes, were the debtors' situation reversed, they would undoubtedly ask the Court to consider their actual income rather than the historical "snapshot" contemplated by the means test. In the recent case of In re Arsenault, 2007 WL 1956277 (Bankr. M.D. Fla. 2007), the court concluded that the Form B22C should "be the basis for projected disposable

5

income unless there is evidence that simply using the historic six-month snapshot does not form a reasonable basis for projecting income forward." This Court believes this is a fair application of the good faith test to the calculation of current monthly income. In this case, there is evidence that the Form B22C does not constitute a reasonable forecast of the debtors' future income. Accordingly, the trustee's objection to confirmation is sustained.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

Dated:  August 24, 2007

BY THE COURT:

/s/ Thomas S. Utschig

Hon. Thomas S. Utschig
U.S. Bankruptcy Judge